Entered on Docket
May 10, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed May 10, 2011

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

In re:　　　　　　　　　　　　　　　　)
JAMES E. MCGOEY,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)　Case No.　　10-70004 WJL
　　　　　　　　　　　　　　　　　　　)　Chapter 11
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Debtor.　　　　　　　　 )
_____)

## MEMORANDUM OF DECISION REGARDING SUFFICIENCY
## OF DISCLOSURE STATEMENT

The Court has reviewed the Disclosure Statement and accompanying Plan of Reorganization proposed by James E. McGoey, the debtor ("Debtor") in the above-captioned chapter 11 case. A hearing on the adequacy of the Disclosure Statement is set for **Wednesday, May 11, 2011 at 9:30 a.m.** The Court issues this Memorandum of Decision Regarding Sufficiency of Disclosure Statement in an effort to assist the Debtor and parties in interest, and to streamline the discussion at the hearing, by pointing out certain apparent deficiencies in the Disclosure Statement and Plan currently on file that will need to be remedied before the Disclosure Statement may be approved. The Court expects the Debtor and parties in interest to review this Memorandum of Decision, and to be prepared to address the issues set forth herein, and with greater particularity in the Exhibit "A" attached hereto, at the May 11 hearing.

Section 1125(b) of the United States Bankruptcy Code states that acceptances or rejections of a

proposed plan may not be solicited from holders of claims or interests unless there is transmitted with the solicitation, inter alia, a written disclosure statement, approved, after notice and a hearing, by the court as containing "adequate information." 11 U.S.C. § 1125(b). "Adequate information" means information of a kind, and in sufficient detail, as is reasonably practical, in light of the nature and history of the debtor, to enable a hypothetical investor of the relevant class to make an informed judgment about the plan. 11 USC § 1125(a).

For information to be "adequate," it must be accurate and intelligible as well as sufficient in detail. Moreover, the court should not approve a proposed disclosure statement that describes a plan of reorganization that, on its face, cannot be confirmed as a matter of law; there would be no point in soliciting acceptances or rejections of such a plan. In re Pecht, 57 B.R. 768, 769 (Bankr. E.D. Va. 1986). And while the court must consider and rule on objections to the deficiency of any proposed disclosure statement, the court also has an independent duty to review a proposed disclosure statement, and to satisfy itself that any proposed disclosure statement fulfills the requirements of Section 1125. In re Hoosier Hi-Reach, Inc., 64 B.R. 34, 39 (Bankr. S.D. Ind. 1986) (citing In re Landscaping Services, Inc., 39 B.R. 588 (Bankr. E.D.N.C. 1984)).

As is set forth in the accompanying Exhibit "A", after review, the Court notes a number of apparent deficiencies in the Disclosure Statement and Plan of Reorganization on file in this case:

1. The proposed Disclosure Statement and Plan of Reorganization contain numerous apparent typographical errors, errors of reference, and additional erroneous statements concerning the Debtor, its business, its assets and its creditors. See, Exhibit "A", part I, for a detailed discussion of these issues. These matters must be corrected before the Disclosure Statement may be approved.

2. The proposed Disclosure Statement fails to contain sufficient information concerning the Debtor's assets, the conduct of its business, and the apparent relationship between the Debtor, an individual, and a corporate entity through or in conjunction with which the Debtor appears to conduct business. See, Exhibit "A", part II. The proposed Disclosure Statement and Plan also fail to describe, in sufficient detail, the proposed treatment of the holders of certain classes of claims in this case, including instances in which a proposed treatment of a putatively secured creditor may lead to the creation of a deficiency claim that will also require treatment under the Plan. Id. The proposed

Disclosure Statement and Plan also fail to contain an adequate description of the manner in which the Plan will satisfy certain of the standards for confirmation set forth in Section 1129(a) of the Bankruptcy Code, including, for example, the requirement of Section 1129(a)(7) that, if a holder of a claim has not accepted the plan, the holder of such claim will receive or retain under the plan property of a value that is not less than the amount that such a holder would receive were the debtor's assets liquidated under chapter 7 (the "best interests of creditors test").  Id.  With respect to this last point, the Court realizes that the Debtor may believe that the relevant information is contained within the text of the Disclosure Statement, but the Court is concerned that information of that importance be presented in as focused, conspicuous, and straightforward a manner as possible.  These matters must also be resolved before the proposed Disclosure Statement may be approved.

3. The proposed Disclosure Statement appears to describe a plan that cannot be confirmed as a matter of law.  For example, the proposed treatment of the holders of claims secured by the Debtor's residence, and the claims of certain taxing authorities, appear to be inconsistent with the requirements of the Bankruptcy Code.  See, Exhibit "A", part III.  These matters must also be resolved before the proposed Disclosure Statement may be approved.

The Court has also reviewed the "Objection by Creditor Emeryville Warehouse Lofts Association to Debtors [sic] Chapter 11 Disclosure Statement and Plan of Reorganization" (the "Objection"), and will address the matters raised therein at the hearing.

**\*\*\*END OF DOCUMENT\*\*\***

# EXHIBIT A

# DEFICIENCIES IN PLAN AND DISCLOSURE STATEMENT

## I. Typographical Errors, Errors of Reference, and Additional Erroneous Statements

**A.** The second sentence of page 6 of the Plan is unintelligible and should be clarified. <u>See</u> Plan, p. 6, lines 3-5.

**B.** On page 7, line 18, of the Plan, the word "fun" should "fund."

**C.** On page 7, line 12, of the Plan, "Alameda County Tax Collector" is incorrectly referred to as "Marin County Tax Collector."

**D.** On page 10, line 1.5, of the Plan, "Wells Fargo Bank, N.A." is incorrectly referred to as "JPMorgan Chase Bank, N.A."

**E.** Throughout the Plan, "Section 1123(b)(5)" of the Bankruptcy Code is incorrectly referred to as "Section 11123(b)(5)" of the Bankruptcy Code. <u>See e.g.</u>, Plan, p. 10, lines 3 & 17.

**F.** On page 10, line 19, of the Disclosure Statement, it appears that the phrase "plan to pay" should be "plans to buy".

**G.** On page 11, line 7, of the Disclosure Statement, "Community Reinvestment Fund" is incorrectly referred to as "California Reinvestment Fund."

## II. Informational Deficiencies and Omissions

**A.** The Plan and Disclosure Statement fail to describe adequately Class 4. Plan, p. 7, lines 5-10; Disclosure Statement, p. 11, lines 8-9. First, the Plan and Disclosure Statement do not disclose the priority of the Emeryville Lofts lien. Second, the description of the property in Class 4 is different depending on where the reader looks in the Plan. On page 6, line 7, of the Plan, the description makes reference to Suite 211. On page 6, line 17, the same property is described, but there is no reference to Suite 211.

**B.** The Plan and Disclosure Statement fail to provide a treatment for the priority tax claim of the Franchise Tax Board. The Franchise Tax Board has filed a priority tax claim in the amount of $23,093.16. The Plan must provide for this claim in accordance with the Bankruptcy Code.

**C.** The proposed treatment of Class 1 is not commercially reasonable. The Plan provides that, "if Wells Fargo denies the loan modification, then the debtor shall have 84 months from the date of the written rejection to confirm an amended plan which provides for a cure of the pre-petition arrears of $33,709.00." Plan, p. 10, lines 9-12. Eighty-four months is not a reasonable amount of time to confirm an amended plan that addresses the pre-petition arrears. The Court thinks that the Plan may have intended to state that the Debtor will have eighty-four months from the date of the written rejection letter to cure the pre-petition arrears.

**D.** The Plan and Disclosure Statement suggest that Principal Bank is the only creditor that holds a Class 7 deficiency claim. Plan, p. 7 & 8, section 2.2; Disclosure Statement, p. 12, lines 2-3. After reviewing the description of the treatment of other secured classes, it is unclear whether this is the case. For example, the Plan provides that the lien of Community Reinvestment Fund, Inc. will be modified pursuant to "Section "11123(b)(5) [sic] and 506(b) of the Bankruptcy Code" and that the Debtor will make interest only payments on the unpaid principal balance of $450,000 for 84 months.

Plan, p. 11, lines 11-16. If the Debtor plans to strip a lien down to the value of the property, then the lienholder would be entitled to a Class 7 deficiency claim for the unsecured portion of the claim.

**E.** The Plan asserts that the Debtor has no known unexpired leases or executory contracts. Plan, p. 15, lines 24-25. However, the Disclosure Statement suggests that the Debtor's corporation, Rand Corp., operates out off the Debtor's commercial property on Watts Street and discusses rents collected from that commercial property. See Disclosure Statement, p. 8, lines 17-19, & p. 14, lines 9-10. The Court questions whether a lease agreement exists for the use of the commercial property on Watts Street.

**F.** The Disclosure Statement's discussion of events leading up to and during the chapter 11 is inadequate. The discussion is too fragmented and fails to provide a cohesive story. More specifically, the discussion should provide greater detail regarding the nature of the Debtor's business, who is renting the Watts Street property, the rents being generated by Watts Street property, the co-tenant on the Watts Street property, and the relationship between Rand Corp. and the Debtor. Furthermore, the Debtor should explain the statement that "the debtor has generated over $43,000." Disclosure Statement, p. 9, lines 19-21. The Debtor should break down from what sources the Debtor generated the money and whether the amount constitutes revenues or profits.

**G.** The Plan and Disclosure Statement state different amounts in describing the amount of the Class 5 claims entitled to receive a distribution. The Plan indicates that the amount of Class 5 claims entitled to distribution is $45,117. Plan, p. 13, lines 13-17. In contrast, the Disclosure Statement estimates "Allowable Unsecured Claims" to be $90,450. Disclosure Statement, p. 12, lines 1-2. This discrepancy should be remedied or explained.

**H.** On page 11, lines 24-25, of the Disclosure Statement, the Debtor lists disputed debts of $64,000. The Debtor has not listed any disputed debts in his schedules. The Disclosure Statement should indicate which debts the Debtor disputes.

**I.** The liquidation analysis is inadequate. Disclosure Statement, p. 16-17. The liquidation analysis should contain a graph-like analysis showing the net proceeds from the each parcel of real property and the Debtor's personal property. The liquidation analysis should not start by simply stating how much a chapter 7 trustee will be able to generate in selling the Debtor's property. Although the reader may be able to ascertain how the Debtor arrived at a liquidation value by looking elsewhere in the Disclosure Statement, this information should nevertheless be clearly set out in the liquidation analysis.

**J.** The feasibility of the Plan is not adequately discussed. Disclosure Statement, p. 18. The discussion should set forth the anticipated sources of revenue and show how they are intended to be applied in order to perform the plan. On page 14, the Disclosure Statement does include a section entitled "Means for Implementation of the Plan" that somewhat accomplishes this objective. However, the chart in that section should be located within the feasability analysis. Moreover, the narrative of the feasability analysis should address the chart with specificity and explain how the Debtor arrived at his numbers and projections (e.g., the basis for the debtor's income and rents should be explained).

**III. Proposed Treatments that Fail to Conform with the Bankruptcy Code and/or Federal Rules of Bankruptcy Procedure**

**A.** The Plan provides that the first priority lien on the real property in which the Debtor resides will be stripped down to the value of the property and that the Debtor will make interest only payments of $1,875.00 for 84 months. The plan does not explain how this can be done given the prohibition on the modification of a secured claim secured only by the Debtor's principal residence. See 11 U.S.C. § 1123(b)(5).

1. **B.** On page 8, lines 4-5, of the Plan, the statement that "[u]pon confirmation, the lien will be cancelled" is a misstatement of the law. The lien will not be avoided until the Debtor completes the plan.

**C.** The amount of Class 5 claims in both the Plan and Disclosure Statement are seriously understated. Plan, p. 13, lines 13-17; Disclosure Statement, p. 12, lines 1-2. The amount stated in the Plan is the amount of the proofs of claim filed. The amount stated in the disclosure statement appears to be based on the amount of claims scheduled minus $64,000 in general, unsecured claims that the Debtor disputes. <u>See</u> Disclosure Statement, p. 19 & 20, Section 5. The debtor scheduled $154,450 in general unsecured claims. None of the claims were listed as disputed, contingent or unliquidated. In a chapter 11, if claims are scheduled and not listed as disputed, contingent or unliquidated, the holders of the claims need not file a proof of claim to be entitled to receive a distribution. <u>See</u> Federal Rule of Bankruptcy Procedure 3003(b)(1).

**D.** The described treatment of unclassified tax claims may be improper. The Bankruptcy Code requires priority tax claims to paid in full 5 years from the order of relief. <u>See</u> 11 U.S.C. § 1129(a)(9)(C). The plan currently proposes to pay priority tax claims in full 48 months from the Effective Date of the Plan. <u>See</u> Plan, p. 8, lines 13-20. In order for the proposed treatment to conform with the Code, the effective date of the plan must occur on or before August 31, 2011.

COURT SERVICE LIST

1

2
Marc Voisenat
3 Law Offices of Marc Voisenat
1330 Broadway #734
4 Oakland, CA 94612

5 James E. McGoey
1500 Park Ave. #211
6 Emeryville, CA 94608

7 Office of the U.S. Trustee
1301 Clay St. #690N
8 Oakland, CA 94612

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28